REVISED JULY 15, 2013

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 20, 2013

Lyle W. Cayce
Clerk

No. 11-20778

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

EDMUNDO ZUNIGA, also known as Mundo,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before ELROD and HIGGINSON, Circuit Judges, and JACKSON, District Judge.[*]

PER CURIAM:

Edmundo Zuniga ("Zuniga") appeals his sentence of 171 months of imprisonment, challenging enhancements for having a management role in his offense and for causing bodily injury. We find no error in the management enhancement, but we VACATE the bodily-injury enhancement, and REMAND for resentencing.

---

[*]Chief Judge of the Middle District of Louisiana, sitting by designation.

I.

Zuniga pleaded guilty to: (1) interference with commerce by means of robbery, in violation of 18 U.S.C. § 1951(a) (Count One); (2) conspiracy to use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(o) (Count Two); and (3) aiding and abetting the use and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii) (Count Three).

The Presentence Report (PSR) included facts gathered from interviews of confidential informants, co-conspirators, and witnesses. According to the PSR, a confidential informant told law enforcement that Jose Juarez—a disgruntled drug-dealer—had organized a crew to steal approximately $700,000 and two kilograms of cocaine from a home. The crew included Zuniga and three other men.

Later that day, a police officer who was observing the home saw Zuniga and three co-conspirators arrive in a gold Oldsmobile. While the driver waited in the car, Zuniga and the other two men forced their way into the home with handguns. Six minors were inside the residence when the robbery occurred. Several of the minors told law enforcement that the robbers entered the house screaming, "[P]olice, where is the money!" The next day, one of the minors told the police that he saw the crew rush to the back door of the home after learning that the police were outside. The minor stated that he saw "one man trample [ ] over a 15-year-old girl causing her pain in her arm." He also saw "one man point a gun several times, at [an] 8-year-old."

According to the PSR, a co-conspirator ("Delgado") told officials during an interview that Zuniga had recruited him to commit the robbery. Delgado also stated that Zuniga appeared to be in charge of the crew during the robbery because Zuniga would receive calls from an unknown person and then give orders to the other crew members. The PSR also included statements from another co-conspirator ("Alvarez")—who was Zuniga's cousin—about Zuniga's

managament role in the robbery of the home.  According to Alvarez, Zuniga called him to ask if he wanted to make money.  Delgado and Zuniga then picked up Alvarez in the car that they took to rob the home.  Inside the car, Alvarez told Zuniga that it was his first time to commit a robbery, and Zuniga then provided the handgun that Alvarez used during the robbery.  The PSR also stated that Alvarez was upset at Zuniga for pointing a gun at a child during the robbery.

The PSR recommended a two-level enhancement pursuant to U.S. Sentencing Guidelines Manual [hereinafter "U.S.S.G."] § 3B1.1(c) because of Zuniga's aggravating role as a manager of the crew that committed the robbery. It also recommended a two-level enhancement pursuant to § 2B3.1(b)(3)(A) because the 15-year-old girl sustained bodily injury when one of the robbers trampled over her in an attempt to escape the home during the offense.

Zuniga objected to the application of the § 3B1.1(c) enhancement for his management role in the robbery.  Zuniga argued that he did not recruit others to commit the robbery, and that he was an average participant who was told what to do by others.  At the sentencing hearing, the government agreed with defense counsel that the district court should consider Zuniga an average participant.  Nevertheless, the district court overruled Zuniga's objection, stressing that the co-conspirators' statements about Zuniga's management role in the robbery were consistent with one another.

Zuniga also objected to the § 2B3.1(b)(3)(A) enhancement for causing bodily injury.  He argued that the PSR did not establish that the 15-year-old victim suffered bodily injury, that there was no evidence that the victim sought medical attention, and that the injury was neither painful nor obvious.  The district court also overruled this objection, finding that the victim suffered a bodily injury that was painful and obvious.

After adopting the PSR, the district court calculated Zuniga's Guidelines range of seventy to eighty-seven months for Counts One and Two, and concluded that Count Three carried a mandatory minimum term of imprisonment of seven

years (eighty-four months) pursuant to § 924(c)(1)(A)(ii).[1] The district court determined that a sentence at the high end of the Guidelines range was appropriate based on the extent of Zuniga's involvement in the robbery and the violent nature of his instant and prior offenses. It sentenced Zuniga to concurrent terms of eighty-seven months on Counts One and Two, followed by a consecutive term of eighty-four months on Count Three, for a total sentence of 171 months. Zuniga timely appealed.

## II.

We review the district court's interpretation and application of the Guidelines de novo, and its factual findings for clear error. United States v. Rodriguez, 630 F.3d 377, 380 (5th Cir. 2011). A factual finding is not clearly erroneous if it is plausible in light of the record as a whole. Id. We will find clear error only if a review of the record results in a "definite and firm conviction that a mistake has been committed." Id. (internal quotation marks and citation omitted).

## A.

Zuniga claims that the government failed to show by a preponderance of the evidence that he had a management role in the robbery, which is necessary to support the § 3B1.1(c) enhancement.[2] In support of his position, Zuniga relies on the government's agreement at sentencing that he was an average participant in the robbery. Zuniga further argues that in applying the § 3B1.1(c) enhancement, the district court "relied on third and fourth hand summary statements repeated in the PSR without corroboration." The government counters that in the absence of rebuttal evidence, the district court was free to adopt the findings of the PSR. It further argues that facts in the PSR regarding

---

[1] Zuniga had a total offense level of twenty-five and a criminal history category of III.

[2] Guideline § 3B1.1(c) provides for a two-level enhancement "[i]f the defendant was an organizer, leader, manager or supervisor" of criminal activity. U.S.S.G. § 3B1.1(c).

Zuniga's management role bore sufficient indicia of reliability because they were based on consistent and detailed statements of two co-conspirators about the robbery.

When making factual findings for sentencing purposes, a district court "may consider any information which bears sufficient indicia of reliability to support its probable accuracy." United States v. Harris, 702 F.3d 226, 230 (5th Cir. 2012) (internal quotation marks and citation omitted). "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." Id. (internal quotation marks and citation omitted). However, "[b]ald, conclusionary statements" in a PSR are not sufficiently reliable. See id. at 230 n.2 (quoting United States v. Elwood, 999 F.2d 814, 817–18 (5th Cir. 1993)). "If the factual recitation [in the PSR] lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence." See id. at 231. But if the factual recitation in the PSR bears sufficient indicia of reliability, then the "defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." United States v. Ollison, 555 F.3d 152, 164 (5th Cir. 2009) (citation and internal quotation marks omitted); see also United States v. Ayala, 47 F.3d 688, 690 (5th Cir. 1995) (confirming that "in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it"); United States v. Vital, 68 F.3d 114, 120 (5th Cir. 1995). Rebuttal evidence must consist of more than a defendant's objection; it requires a demonstration that the information is "materially untrue, inaccurate or unreliable." Harris, 702 F.3d at 230.

Although this case involves an unusual circumstance in that the government agreed with Zuniga's objection to the role enhancement, Zuniga cites no authority to support his argument that it was error, simply because the government agreed with his objection, for the district court to impose the

§ 3B1.1(c) enhancement. Zuniga objected to the accuracy of the facts in the PSR involving his management role in the robbery, but he did not introduce any rebuttal evidence to show that those facts were "materially untrue, inaccurate or unreliable." Id. The district court explicitly reasoned that the co-conspirators' detailed accounts in the PSR of the offense and Zuniga's management role were reliable because they were consistent with one another. Specifically, the district court stated at Zuniga's sentencing hearing: "So, we've got two people saying that . . . Zuniga was the leader of the crew."

In his brief, Zuniga asserts in passing that facts in the PSR of his management role were unreliable simply because they were based on statements of his co-conspirators. We have previously rejected this argument. See United States v. Cantu–Ramirez, 669 F.3d 619, 629 (5th Cir. 2012) (affirming that a co-conspirator's testimony that supported a PSR calculation was not categorically unreliable for sentencing purposes). Zuniga's reliance on United States v. Ceballos–Amaya also cuts against his position on this issue. 470 F. App'x 254 (5th Cir. 2012) (unpublished). In Ceballos–Amaya, the PSR stated that a drug runner affirmed that the defendant had assisted in recruiting him to transport drugs. Id. at 262. We upheld the district court's application of the § 3B1.1(c) enhancement. Id. at 263. We reasoned that the district court was permitted to rely on facts in the PSR of the defendant's leadership role when, as here, the defendant offered no evidence at the sentencing hearing to rebut those facts. Id. Zuniga cites to the opinion concurring in part and dissenting in part, which concluded that the runner's "mere affirmative response to the conclusionary allegation" that the defendant recruited him to transport drugs lacked sufficient indicia of reliability. Id. at 272 (Graves, J., concurring in part and dissenting in part). Zuniga's case, however, is distinguishable from this interpretation of the facts in Judge Graves's opinion because Zuniga's PSR includes more than a single affirmation of his management role. Rather, his PSR includes detailed

and consistent information from two co-conspirators about Zuniga's management role and the offense itself.

United States v. Patterson, which Zuniga cites, is also inapposite. 962 F.2d 409 (5th Cir. 1992). In Patterson, we concluded that it was error for the district court to apply the § 3B1.1(c) enhancement when the sole basis for the enhancement was an unsworn assertion by an Assistant United States Attorney. Id. at 414–15. Unlike the situation in Patterson, Zuniga's PSR provides details of Zuniga's offense from interviews of confidential informants, co-conspirators, and witnesses. Although additional sources did not corroborate the co-conspirators' particular statements about Zuniga's management role, independent facts in the PSR corroborated another specific detail of the co-conspirators' descriptions of the offense. Specifically, a minor's statement corroborated Alvarez's account that Zuniga pointed a gun at a child inside of the home during the robbery. Although Zuniga objected to the accuracy of the minor's statement, it corroborated Alvarez's account of the offense. Therefore, facts of Zuniga's management role derived from Alvarez's statement as described in the PSR bore sufficient indicia of reliability to support the district court's finding. See United States v. Chavez, 947 F.2d 742, 746–47 (5th Cir. 1991) (holding that a co-conspirator's statements in a PSR alleging that the defendant recruited him into a trafficking scheme had sufficient indicia of reliability for sentencing purposes under § 3B1.1 when additional sources corroborated other statements of the co-conspirator about the defendant's conduct that did not involve recruitment); see also United States v. Rogers, 1 F.3d 341, 344 (5th Cir. 1993) (upholding the district court's reliance on quantity-of-drug information provided by confidential informants where there was no corroboration of the amounts attributed to the defendant, but the government's investigation corroborated many other details of the drug scheme).

For these reasons, our review of the record does not give rise to a definite and firm conviction that the district court made a mistake in applying the

§ 3B1.1(c) enhancement. Accordingly, the district court's factual finding that Zuniga had a management role in the robbery was not clearly erroneous. Rodriguez, 630 F.3d at 380.

B.

Zuniga challenges the district court's application of the bodily-injury enhancement pursuant to § 2B3.1(b)(3)(A). Zuniga concedes that one of the robbers stepped on a victim in an attempt to escape the home. He disputes, however, that there was sufficient evidence of the victim's injury to support the enhancement. We agree.

Guideline § 2B3.1(b)(3)(A) provides for a two-level enhancement if a defendant causes "bodily injury" to a victim. U.S.S.G. § 2B3.1(b)(3)(A). The commentary defines bodily injury as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." Id. § 1B1.1 cmt. n.1(B). In evaluating the district court's application of the bodily-injury enhancement, "the focus of the inquiry is not on the actions of the defendant, but rather on the injury sustained" by the victim. United States v. Guerrero, 169 F.3d 933, 946 (5th Cir. 1999) (citation omitted). The injury need not be the "type for which medical attention ordinarily would be sought" so long as the injury is "painful and obvious." Id. at 947 (quoting U.S.S.G. § 1B1.1 cmt. n.1(B)).

Zuniga's case is similar to Guerrero, in which we held that it was error for the district court to apply the bodily-injury enhancement. Id. at 945. In Guerrero, the only evidence in support of the enhancement were statements in the PSR that the victim was "pistol whipped" and "struck on his back." Id. In holding that the evidence was insufficient to support the enhancement, we stressed that "[v]ery little was said about the degree of the injury cited to justify the enhancement recommendation." Id. We further reasoned that there was "[n]o evidence of any injury" and rejected the conclusion that "evidence regarding

the severity of the attack is always sufficient to support" the bodily-injury enhancement. Id. at 947.

Similarly, evidence of the victim's sustained injury in Zuniga's case is sparse. The only evidence supporting the enhancement is a statement that a minor saw "one man trample[ ] over a 15-year-old victim causing her pain in her arm." In response to Zuniga's written objection to the enhancement, the addendum to the PSR merely reiterated that "[t]he eyewitness who was inside of the house gave specific details on how the juvenile victim was trampled as the defendants exited the home, and how she was in pain." As in Guerrero, there is no evidence that the victim sustained any significant injury. And "trampling," like pistol whipping, is not the "type[] of attack[] for which the resulting injury follows automatically and is obvious." Id. Moreover, the evidence provided no specificity regarding how the witness knew the child's arm was in pain.

The government argues that the district court's application of the bodily-injury enhancement was proper, and that the district court was entitled to adopt the findings of the PSR without further inquiry because Zuniga did not offer rebuttal evidence. In support of these points, the government relies on three cases from this circuit. United States v. Jefferson, 258 F.3d 405, 413 (5th Cir. 2001); Guerrero, 169 F.3d at 946; Vital, 68 F.3d at 120. Jefferson is the only case that the government cites in which we upheld the district court's application of the bodily-injury enhancement.[3] 258 F.3d at 413–14. Unlike the PSR in Zuniga's case, however, the PSR in Jefferson included a detailed description of the victim's sustained injuries. Id. In Jefferson, the PSR stated that the

---

[3] As explained above, Guerrero supports Zuniga's position that the district court's application of the bodily-injury enhancement was improper. Although the government cited Vital as support for the proposition that a district court may rely on facts in a PSR without further inquiry or explanation in the absence of rebuttal evidence, it did not discuss the facts of Vital or make fact-on-fact analogies to the case. 68 F.3d at 120. Vital did not involve the bodily-injury enhancement—rather, it involved facts in a PSR about drug quantities. See id. Moreover, it is the lack of facts in Zuniga's PSR regarding bodily injury that is fatal to the district court's application of the bodily-injury enhancement here.

defendant struck the victim on the back of the head, and that the victim "received an injury to her head . . . described as a 'knot', in addition to cuts, scrapes, and bruises." Id. In light of this detailed description and the defendant's failure to provide rebuttal evidence, we concluded that the district court was entitled to adopt the factual findings of bodily injury in the PSR.[4] Id.

Here, the only evidence in the PSR supporting the bodily-injury enhancement is a statement from a witness that the robbers "caused [the victim] pain in her arm." This statement about pain says nothing about the degree of the victim's injury. See Guerrero, 169 F.3d at 945. Contrary to the government's position, Zuniga had no burden to offer rebuttal evidence to the description of bodily injury in the PSR because there was no description of injury in the PSR, i.e., the PSR lacked any facts regarding injury with an adequate evidentiary basis. See Harris, 702 F.3d at 230 (recognizing that a defendant must offer rebuttal evidence when confronted with facts in a PSR "that are supported by an adequate evidentiary basis").

Because the statement in the PSR did not specify whether the victim sustained any injury, and because—like in Guerrero—a significant injury does not invariably follow from the type of conduct at issue, we conclude that the district court's factual finding of bodily injury to support the § 2B3.1(b)(3)(A) enhancement was clearly erroneous. Rodriguez, 630 F.3d at 380. The government does not argue that this error was harmless, nor could it.

---

[4] This case is also distinguishable from two recent unpublished, non-precedential cases in which we upheld the bodily-injury enhancement. Unlike the record in the instant case, the record in those cases each included a detailed factual basis, and in one of them the victim actually had been interviewed by a probation officer. See United States v. Washington, 500 F. App'x 279, 282–83 (5th Cir. 2012) (unpublished) (upholding the bodily-injury enhancement when the PSR stated that the victim was punched in the nose with a closed fist and "felt pain," which the victim corroborated during an interview with a probation officer); United States v. Green, 455 F. App'x 469, 472 (5th Cir. 2011) (unpublished) (upholding the bodily-injury enhancement when the record contained evidence that the victim "suffered temporary hearing loss, irritation, and continuing ringing in his ears as a result of [the defendant's] firing of a shotgun toward the wall approximately three to four inches away from [the victim's] face. . . . and sought medical attention for the problem and received prescriptions").

III.

For the foregoing reasons, we conclude that it was not error for the district court to impose the management enhancement, but the bodily-injury enhancement is VACATED, and the case is REMANDED for resentencing.