# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30172

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LAVAR ELLIOTT KITTELBERGER, also known as Lavar E. Kittelberger; ANTHOWN LATARIUS SWAN; ORLANDO BRIAN WASHINGTON, also known as Orlando Washington,

Defendants - Appellants

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2014

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 2:13-CR-57-3

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

WIENER, Circuit Judge:*

Defendants-Appellants Lavar Elliot Kittelberger, Anthown Latarius Swan, and Orlando Brian Washington were convicted by a jury for their participation in a fraudulent check cashing conspiracy. Appellants raise the following errors on appeal: (1) The district court erred in denying their motions to suppress, (2) their convictions under 18 U.S.C. § 514(a)(2) should be vacated

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30172

under our precedent, and (3) the district court erred by applying United States Sentencing Guidelines § 3B1.1(c) to Appellant Kittelberger's sentence because no evidence in the record supports the enhancement.

## I.     FACTS AND PROCEEDINGS

### A.     Factual background

In November 2012, Huey Decou, a security officer for a local branch of First National Bank in Crowley, Louisiana, contacted Lafayette Police Department Detective Todd Borel and informed him that a man named Roy Hawks had successfully cashed a fraudulent check. Detective Borel located Hawks, who agreed to cooperate with the police. Hawks told Detective Borel that a group of men had approached him at a homeless shelter in Lafayette, Louisiana, and offered him $300 per check that he cashed for them. Hawks revealed that the men had arranged to meet him at the homeless shelter the next morning so he could cash more checks; and, they had asked him to recruit other homeless individuals to cash checks for them.

At about 8:00 a.m. the next day, Detective Borel and his support team established surveillance near the homeless shelter. At approximately 8:30 a.m., they observed Hawks meet with someone in a white Chevrolet Malibu with Florida plates. The officers conducted a license check on the vehicle and determined that it was registered to the Enterprise car rental company. Enterprise confirmed that the car was leased to "Orlando Washington." The officers followed the Malibu to the Staybridge Inn where they observed it pull into the hotel's parking lot. It remained parked in the front drive for a few moments, then departed without picking up or dropping off any passengers. The surveillance team lost sight of the Malibu shortly after it left the parking lot. At that point, Detective Borel and Detective Broussard returned to the Staybridge Inn to determine if "Orlando Washington" was registered there.

The hotel required them to obtain a court subpoena, which they did. At around 11:45 a.m., the hotel confirmed that Orlando Washington had rented Suite 206.

At approximately the same time – 11:45 a.m. – Detective Bajat relocated the Malibu. He observed the vehicle as it stopped at various places where its occupants spoke to different individuals, most of whom appeared to be homeless. After receiving a radio report from an officer expressing concern that their surveillance of the Malibu might have been detected, Sergeant Scott Morgan decided to order a traffic stop of the Malibu to determine whether the driver was Orlando Washington. Before initiating the traffic stop, however, Sergeant Morgan decided that his officers should secure Suite 206 until a search warrant could be obtained. His reasoning, as explained during the suppression hearing, was two-fold: (1) Stopping the Malibu might permit its occupants to alert any individuals in the suite of the ongoing investigation, and (2) any individuals in the suite might become concerned if the Malibu's occupants failed to check in or arrive back at the hotel by a particular time. In his view, either event could expose the officers stationed at the hotel to injury or afford the suite's occupants an opportunity to destroy evidence.

At approximately 11:54 a.m., officers stopped the Malibu and identified the men in the vehicle as Orlando Washington and Kwame Cunningham. After they received confirmation that the Malibu had been stopped, Detectives Borel, Broussard, and Rummel, along with other officers, knocked on the door of Suite 206. When no one answered, the officers entered the suite using a key provided by the hotel staff. The officers spread out to secure the suite's several rooms, and they found Swan and a woman in bed in one of the rooms. Kittelberger arrived while the officers were securing the premises. Kittelberger, Swan, and the unidentified woman were *Mirandized* and transported to the police station for questioning.

No. 14-30172

About thirty minutes after the officers first entered the suite, Detective Broussard returned to the station to prepare an application for a warrant to search it. Trooper Frank Garcia and Detective Rummel remained in the living room area to ensure that nothing was disturbed while they waited for a search warrant. At 2:05 p.m., a state court judge issued warrants authorizing the search of Suite 206 as well as two vehicles associated with Washington – the Malibu and a Toyota Camry. The officers' subsequent investigation confirmed that Kittelberger, Swan, and Washington, together with individuals working with them, had participated in a fraudulent check cashing conspiracy.

**B.     Indictment and district court proceedings**

Swan, Washington, and Kittelberger were indicted by a grand jury on the following offenses: (1) one count of violating 18 U.S.C. § 1349, conspiracy to defraud a financial institution; (2) eight counts of violating 18 U.S.C. § 514(a)(2), fictitious obligations; (3) one count of violating 18 U.S.C. § 1708, possession of stolen mail; and (4) one count of violating 18 U.S.C. § 1028A (a)(1), aggravated identity theft.

Swan filed a motion to suppress evidence recovered from Suite 206, asserting that the officers involved in the investigation lacked permission and legal authority to enter the room. Washington filed a similar motion to suppress, contending that the officers' warrantless entry violated his Fourth Amendment rights and that the evidence seized from Suite 206 was inadmissible. Kittelberger orally joined in the motions to suppress. After conducting an evidentiary hearing, the district court denied the motions in a memorandum order for the following reasons: (1) The warrantless entry was justified by exigent circumstances, namely, that the Malibu's occupants could have warned the individuals in Suite 206 once the officers initiated a stop of the Malibu, and (2) even if the officers' warrantless entry into Suite 206 violated the Fourth Amendment, excluding the evidence would be improper

4

No. 14-30172

because the government had established by a preponderance of the evidence that it would have obtained the evidence even if no misconduct had taken place.[1]

The case proceeded to a five-day jury trial.  The jury found Swan and Washington guilty on all counts of the indictment, save the one for aggravated identity theft.  The jury found Kittelberger guilty on all counts except three counts of fictitious obligations.  Washington, Kittelberger, and Swan timely appealed their convictions and sentences, asserting that the district court erred in denying their motions to suppress.  On appeal, Kittelberger and Swan challenge their convictions under 18 U.S.C. § 514(a)(2), claiming that their conduct does not support convictions under our precedent.[2]  Kittelberger also appeals the district court's application of a two-level enhancement to his sentence under U.S.S.G. § 3B1.1(c), claiming that no evidence in the record supports such enhancement.

## II.    ANALYSIS

### A.    Denial of motions to suppress

We review the district court's findings of fact on a motion to suppress for clear error, and we review its conclusions of law *de novo*.  A factual finding is not clearly erroneous if it is plausible in light of the record as a whole.[3]  We view the facts underlying the suppression determination in the light most favorable to the prevailing party, which in this case is the government.[4]  In an appeal from the denial of a motion to suppress, we may consider the evidence admitted at the suppression hearing and at trial.[5]

---

[1] The district court cited *Nix v. Williams*, 467 U.S. 431, 444 (1984) as the legal authority supporting this conclusion.

[2] Washington raised the Section 514(a)(2) issue in his reply brief.

[3] *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001).

[4] *United States v. Runyan*, 290 F.3d 223, 234 (5th Cir. 2002).

[5] *United States v. Jones*, 239 F.3d 716, 718 (5th Cir. 2001).

No. 14-30172

Appellants contend that the district court erred in finding that exigent circumstances justified the warrantless entry of Suite 206, and that the court should have granted their motions to suppress. Appellants also challenge the district court's conclusion that, assuming illegal entry, the evidence was admissible because the officers would have discovered it even in the absence of misconduct. We conclude it is unnecessary to determine whether the district court's finding of exigent circumstances is correct because we hold that the evidence is admissible under the independent-source exception to the exclusionary rule.[6]

### 1.    Independent source

The exclusionary rule prohibits the introduction of (1) tangible materials obtained as the result of an illegal search or seizure, and (2) testimony concerning knowledge acquired during an unlawful search.[7] Evidence that is otherwise suppressible under the exclusionary rule may be admitted if the connection between the alleged illegality and the acquisition of the evidence is so attenuated as to dissipate the "taint" of the unlawful police activity.[8] To give effect to this principle, we apply different exceptions to the exclusionary rule, one of which the government contends fits the facts of this case, *viz*., the "independent source" doctrine. Under this exception to the exclusionary rule, evidence obtained "independently" of the alleged illegal search is admissible.

In *Segura v. United States*, the Supreme Court held that the police officers' illegal entry into a private apartment did not require the district court to suppress evidence subsequently discovered at that same apartment

---

[6] *See United States v. Register*, 931 F.2d 308, 311 (5th Cir. 1991) (refusing to consider whether exigent circumstances justified the officers' warrantless entry because the evidence was admissible under the independent-source exception).

[7] *See United States v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2013) (citations omitted).

[8] *Runyan*, 290 F.3d at 466 (citation omitted).

pursuant to a valid search warrant.[9]  The Court specifically reserved ruling whether evidence observed in plain view following the warrantless entry is admissible under the independent source exception.  The Court subsequently addressed that question in *Murray v. United States* and held that evidence obtained pursuant to an independently obtained search warrant was admissible *despite* the fact that the police officers first observed the evidence in plain view after their unlawful entry.[10]  The Court further indicated that, to admit evidence under the independent-source exception, the district court is required to make two factual findings: (1) The judge would have issued the warrant even if the supporting affidavit had not contained information acquired during the illegal search, and (2) the police were not motivated to seek a warrant by items observed during their illegal search.[11]  We review the first prong *de novo*, and the second prong for clear error.[12]

We conclude from the record that the affidavit for the search warrant issued for Suite 206 did not contain any information derived from the initial warrantless entry, so the first prong is satisfied.  We therefore turn to the second prong, *viz.*, whether the district court correctly ruled that the government presented evidence sufficient to conclude that the officers would have sought a warrant to search Suite 206 irrespective of their initial warrantless entry.

---

[9] 468 U.S. 796, 814-15 (1984).

[10] 487 U.S. 533, 541 (1988).

[11] *Id.* at 542-43 ("The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue."); *United States v. Bryan*, No. 00-31491, 2001 WL 1468508, at *2 (5th Cir. Oct. 29, 2001) ("This circuit has developed a two-pronged test to determine whether the first and second searches were independent enough to allow evidence from the second search to be admitted.").

[12] *United States v. Hassan*, 83 F.3d 693, 697 (5th Cir. 1996) (citations omitted).

No. 14-30172

Our inquiry is complicated by the district court's failure to make a specific finding whether the officers were motivated to obtain a warrant by the evidence they observed in Room 206. We generally require the district court, as factfinder, to determine whether the initial illegal search "prompted or motivated the officers' decision to seek the warrant," and we will remand the case to the district court to make a finding.[13] On the other hand, we have declined to remand cases in which the district court neglected to make written findings on the officers' motivation when (1) the record is sufficient to convince us that "the theory of independent source supports admission of the evidence," and, (2) "[t]here is enough indication in the record for us to conclude that the court accepted the version of the events relayed by detectives."[14]

Here, the government argues that remand is not necessary because the record supports admitting the evidence under the independent-source exception. Washington counters that remand is necessary because: (1) the government may not raise its independent-source argument for the first time on appeal, and (2) the government failed to elicit any testimony at the suppression hearing or during trial that would support the trial court's "passing reference" to the independent-source doctrine. We reject Washington's contentions. First, the government asserted in the district court that the officers had developed probable cause to enter Suite 206 "entirely independent" from items subsequently found inside of it.[15] In its brief in

[13] *United States v. Restrepo*, 966 F.2d 964, 972 (5th Cir. 1992); *see Murray*, 487 U.S. at 543 (remanding to the district court to make a finding that the agents "would have sought a warrant" even if they had not earlier entered the warehouse).

[14] *Bryan*, 2001 WL 1468508, at *3; *see also United States v. Blount*, 123 F.3d 831, 839 n.6 (5th Cir. 1997) (en banc) (declining to remand for consideration of the officers' motivations because no reasonable factfinder could conclude that the officers' decision to seek the warrant was prompted by evidence observed during their unlawful entry).

[15] The government did not waive its argument because it presented the independent-source issue while the district court possessed the ability to rule on it. *See Hassan*, 83 F.3d at 696.

opposition to the motions to suppress, the government contended that evidence observed in plain view during an initial warrantless entry need not be suppressed if it is later recovered during a search pursuant to a valid warrant. Second, although it is true that the government did not advance specific "independent source" arguments during the suppression hearing, it did present testimony consistent with its position that the evidence viewed in Suite 206 did not prompt the officers to seek a warrant.

Based on our review of the record, we hold that the district court correctly denied the motions to suppress, but we do so on the alternative ground that the evidence is admissible under the independent-source exception to the exclusionary rule. The district court heard testimony at the suppression hearing that: (1) The affidavit accompanying the application for the search warrant contained only information known to the officers *before* they entered Suite 206, (2) the officers did not search Suite 206 prior to securing a warrant, and (3) the officers' only actions after entering Suite 206 were to verify that there were no weapons present and no individuals hiding in the suite. Moreover, the court concluded in its written order that, even assuming the initial warrantless entry was unlawful, any evidence discovered during the subsequent search was admissible because the government had demonstrated that the police would have obtained the evidence even if no misconduct had taken place.[16] The district court did not specify whether its conclusion was based on the inevitable-discovery exception or independent-source exception. As the record supports admissibility based on independent source, we may

---

[16] The district court cited *Nix v. Williams* as legal support for this conclusion. *Nix* concerns the inevitable-discovery doctrine, which Appellants contend does not fit the facts of this case. Because we may affirm on any basis supported by the record, we conclude it is immaterial that the district court cited *Nix* for its conclusion. *See United States v. Boche-Perez*, 755 F.3d 327, 333 (5th Cir. 2014) (citation omitted).

affirm the district court without remanding for further findings.[17]   Based on the record evidence and the district court's written order, we hold that it did not err by denying the motions to suppress because the evidence was admissible under the independent-source exception.

**B.    Convictions under 18 U.S.C. § 514(a)(2) – "Fictitious Obligations"**

The parties agree that Appellants' convictions under 18 U.S.C. § 514(a)(2) must be vacated because they did not pass "fictitious obligations" as that term is interpreted by this court.[18]   We held in *United States v. Morganfield* that although "[the defendants'] actions may well have created 'forged' or 'counterfeit' obligations . . . . [when] the underlying instruments are *facially genuine* checks, § 514(a) is not applicable."[19]  Appellants passed facially genuine checks so we vacate their convictions under 18 U.S.C. § 514(a)(2).  We do not remand the cases for resentencing, however, because vacating their convictions does not affect Appellants' advisory sentencing guidelines ranges.[20]

**C.    United States Sentencing Guidelines § 3B1.1(c)**

Kittelberger appeals the district court's application of U.S.S.G. § 3B1.1(c) to his sentence.  He contends that the record is devoid of evidence that would

---

[17] *See United States v. El-Mezain*, 664 F.3d 467, 540 (5th Cir. 2011) (affirming district court's order denying a motion to suppress for reasons different than those cited by the district court).

[18] The government contends that Washington waived his right to challenge his Section 514(a)(2) conviction because he failed to raise it in his opening brief.  While that is generally true, we conclude that the rule should not be applied under the particular circumstances of this case.  Washington raised the issue in his reply brief, no one disputes the merits of the argument, and it would waste judicial resources to revisit the issue on a collateral challenge to his sentence rather than ruling on it now.

[19] 501 F.3d 453, 461-62 (5th Cir. 2007) (emphasis supplied).

[20] *See United States v. Thomas*, 690 F.3d 358, 372 (5th Cir. 2012). All counts of conviction in this case were grouped, meaning that vacating the § 514(a)(2) convictions would not affect the Appellants' advisory guideline calculations.  Although Kittelberger is serving two years on his conviction for aggravated identity theft consecutively to the sentence imposed on the other counts, vacating Kittelberger's conviction on the Section 514(a)(2) count does not affect his sentence for his aggravated identity theft conviction.

support a finding that he was "an organizer, leader, manager, or supervisor" of the criminal activity. The government counters that not only did Kittelberger fail to rebut the evidence contained in the presentence report, but the evidence at trial confirms that Kittelberger had supervisory authority and directed the activities of his co-conspirators.

We review the district court's application and interpretation of the Advisory Sentencing Guidelines *de novo*, and we review its factual findings for clear error.[21] A sentencing court's decision to apply Section 3B1.1(c) on the grounds that the defendant is an "organizer" is a factual finding which we review for clear error.[22] We will conclude that a finding of fact is clearly erroneous "only if a review of all the evidence leaves us with the definite and firm conviction that a mistake has been committed."[23]

Section 3B1.1(c) provides for a two-level increase in the offense level if the defendant was an organizer or leader of at least one other participant in the crime and he asserted control or influence over at least that one participant.[24] When making factual findings for sentencing purposes, a district court may consider "any information which bears sufficient indicia of reliability to support its probable accuracy."[25] Generally, a presentence report bears "sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations."[26] If the factual recitation in the presentence report bears sufficient indicia of reliability, then the "defendant [has] the burden of demonstrating that the [presentence report] is

---

[21] *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (citations omitted).

[22] *United States v. Giraldo*, 111 F.3d 21, 23 (5th Cir. 1997).

[23] *Rodriguez*, 630 F.3d at 380 (citation and quotation marks omitted).

[24] *See United States v. Jobe*, 101 F.3d 1046, 1065 (5th Cir. 1996) (citation omitted).

[25] *United States v. Zuniga*, 720 F.3d 587, 590-91 (5th Cir. 2013) (citation and quotation marks omitted).

[26] *Id.* at 591 (citation and quotation marks omitted).

inaccurate; in the absence of *rebuttal evidence*, the sentencing court may properly rely on the [presentence report] and adopt it."[27]  Rebuttal evidence must consist of "more than a defendant's objection; it requires a demonstration that the information is materially untrue, inaccurate, or unreliable."[28]

Although Kittelberger asserts that "no evidence" in the record supports the enhancement and that the district court erred by relying on the presentence report, he did not introduce any rebuttal evidence that would show that the information contained in the presentence report was materially untrue, inaccurate, or unreliable.[29]  The district court thus correctly relied on it.[30]  Moreover, the record demonstrates that Kittelberger drove one of the participants to the bank to cash a fraudulent check, thereby controlling another participant in the conspiracy. As Kittelberger has not demonstrated that the enhancement is not plausible in light of the entire record, he fails to show that the district court clearly erred in applying Section 3B1.1(c) to his sentence.

## III.  CONCLUSION

We affirm the district court's order denying Appellants' motions to suppress, and we affirm that court's application of Section 3B1.1(c) to Appellant Kittelberger's sentence.  We vacate Appellants' convictions under Section 514(a)(2).  The judgment of the district court is, in all other respects, AFFIRMED.

---

[27] *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009) (citation and quotation marks omitted) (emphasis supplied).

[28] *Zuniga*, 720 F.3d at 591 (citation and quotation marks omitted).

[29] At his sentencing hearing, Kittelberger's counsel objected to probation's recommendation that the district court apply the § 3B1.1(c) sentencing enhancement on the ground that the PSR did not "state any facts which support a finding, nor [did it] indicate to us which one [organizer, leader, manager, or supervisor] he was."  But, Kittelberger did not introduce any countervailing facts that would disprove the findings contained in the PSR.

[30] *See United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010).