# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10753

UNITED STATES OF AMERICA,

        Plaintiff - Appellee

v.

JAMES CASTLEMAN GIPSON,

        Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
August 20, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas

Before CLEMENT, HIGGINSON, and HO, Circuit Judges.

PER CURIAM:[*]

Appellant James Gipson pled guilty to being a felon in possession of a firearm. The district court subsequently imposed an above-Guidelines sentence, and made reference during sentencing to three prior offenses for which Gipson was charged but not convicted. One of those three offenses—an aggravated kidnapping charge—had been "no-billed": the grand jury heard evidence but declined to indict Gipson. Nonetheless, over objection from Gipson's attorney, the district court concluded that it could "tell from a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-10753

preponderance of the evidence that he committed a significant part of the activities that he was charged with then."

On appeal, Gipson challenges the sentence imposed by the district court. He argues that because a grand jury found there was no probable cause to indict him for aggravated kidnapping, the district court could not have found by a preponderance of the evidence that he committed "a significant part of the activities that he was charged with."

At issue is the district court's factual finding—namely, its determination that Gipson did indeed commit the aforementioned activities. We review that finding for clear error. *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (citation omitted).

We conclude that the district court's finding was plausible. As a general rule, "[i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, *any* information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4 (emphasis added).

Here, in reaching its decision to impose an above-Guidelines sentence, the district court relied on the presentence report prepared by the government. We have long recognized that such reports generally bear "sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007) (citation omitted). However, we note that "mere inclusion in the PSR does not convert facts lacking an adequate evidentiary basis with sufficient indicia of reliability into facts a district court

may rely upon at sentencing." *United States v. Harris*, 702 F.3d 226, 230 n.2 (5th Cir. 2012).

In this case, the PSR bore sufficient indicia of reliability to support the district court's conclusion. The PSR explained how witness testimony corroborated the victim's assertion that Gipson was present at the scene of the alleged attack. Moreover, Gipson himself possessed "numerous tattoos identified by [the victim] as tattoos observed at the time of his assault." The bare fact that the victim did not positively identify Gipson as his assailant in a photo lineup does not deprive the PSR of the requisite indicia of reliability— after all, the victim apparently did not disagree with the witness testimony cited in the PSR that placed Gipson at the scene of the attack, nor did the victim disagree that the tattoos he identified match the tattoos found on Gipson. *Cf. United States v. Toney*, 440 F.2d 590, 591 (6th Cir. 1971) ("When a man is actually seen in court, his expression, the glance from his eyes, the movement of his facial features may be, to a witness, much more convincing that he has seen that man before than observations of a photograph taken of the accused, or views of him at a 'line-up' or police 'show-up.'").

Once the initial indicia-of-reliability requirement is satisfied, the defendant "bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." *United States v. Valencia*, 44 F.3d 269, 274 (5th Cir. 1995) (citation omitted). Yet Gipson has put forth no evidence to that effect. The PSR was therefore a sufficient basis for the district court's determination.

To be sure, as the dissenting opinion makes clear, at least one of us would not have reached this result, had we been placed in the role of the sentencing court. But it was not clear error for the district court to do so, given the evidence cited in the PSR and the absence of any actual contradictory evidence.

No. 17-10753

That leaves the question of the grand jury's no-bill. And Gipson's argument on this point elides an important distinction: A grand jury's no-bill is a decision not to charge the accused with a *particular offense*, not a judgment that *no unlawful conduct whatsoever* occurred. Indeed, at Texas law, "[a] Grand Jury's no-bill is merely a finding that the specific evidence brought before the particular Grand Jury did not convince them to formally charge the accused with the offense alleged." *Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996).

In this case, the district court did not find that Gipson committed the *offense* of aggravated kidnapping. Rather, it simply found by a preponderance of the evidence that Gipson "committed a significant part of the activities that he was charged with then." This determination—which, as noted, rested on the presumptively reliable factual findings contained in the PSR—was in no way irreconcilable with the grand jury's decision not to indict Gipson for a particular offense. Thus, the district court did not clearly err in imposing an above-Guidelines sentence.

AFFIRMED.

No. 17-10753

STEPHEN A. HIGGINSON, Circuit Judge, dissenting:

Our federal criminal justice system overwhelmingly assigns prison terms after guilty pleas based on facts assessed by judges alone, and only to a preponderance, at sentencing hearings. For that reason, we have cautioned sentencing courts not to rely, without inquiry, on unreliable PSR assertions when making factual findings about uncharged arrests.

## I.

The district court staked its above-guidelines sentence on a summary of Gipson's arrest record given in Gipson's PSR. But the PSR simply repeats a police report's unconfirmed statements about Gipson's unrelated, unindicted arrest for the alleged crime of "Aggravated Kidnapping for Ransom/Reward." (In another section the PSR describes the allegation as "Aggravated Kidnapping – Deadly Weapon.") And critical to this case, the PSR affirmatively discloses facts that cast significant doubt on whether Gipson committed the kidnapping. Although the police report recounted that Gipson "possessed numerous tattoos identified by [the victim] as tattoos identified at the time of [the] assault," the alleged kidnapping victim failed to identify Gipson (and another alleged assailant) in a photograph lineup—despite claiming to have been face-to-face with both.[1] Unsurprisingly, then, when Texas sought to indict Gipson, a Texas grand jury "[n]o-billed" the charge.

Yet, without resolving these inconsistencies, the PSR asserted "by a preponderance of the evidence" that Gipson was the kidnapper.

Gipson objected.

---

[1] I am unpersuaded by the majority opinion's reliance on dicta in *United States v. Toney*, an out-of-circuit case that answered a different question: whether a witness's failure to "identify an accused from a photograph" requires excluding an in-court identification. 440 F.2d 590, 591 (6th Cir. 1971). As I explain below, however, the Government in this case never asked the victim to identify Gipson at sentencing.

No. 17-10753

Notably, the Government responded that it would *not* rely on the alleged kidnapping as a basis for an above-guidelines sentence.

Also notably, the probation office acknowledged that it had "no further information" about Gipson's uncharged conduct.

Despite the PSR's exculpatory statements, Gipson's objection, the government's disclaimer, and the probation office's candid concession that it lacked other evidence, the sentencing court still relied on the no-billed offense to impose an above-guidelines sentence. Without conducting any independent inquiry—and without mentioning the tattoos on which the majority opinion now depends—the district court imposed a sentence one-and-a-half times higher than the top of Gipson's guidelines range. Even then the district court did not claim to contradict the grand jury; the court observed instead that it "c[ould] tell from a preponderance of the evidence"—i.e., the PSR's description of a police report—that Gipson committed "a significant part of the activities that he was charged with," namely "str[iking]," "stabb[ing]," "assault[ing]," and attempting to "ransom" the alleged kidnapping victim.

I would hold that the district court reversibly erred.

## II.

Due process requires the Government to prove sentencing facts by a preponderance of evidence. *E.g.*, *United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013). The sentencing court may base its fact-findings on "any information [that] bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)).

As the majority opinion correctly observes, PSRs often clear that threshold. But not always. A PSR does not receive unfettered deference. *See id.*

6

No. 17-10753

To help district courts determine when to discount or adopt a PSR's assertions, this circuit has fashioned a two-step test—one that I respectfully perceive the district court overlooked.

At step one, "the district court must determine whether [the PSR's] factual recitation has an adequate evidentiary basis with sufficient indicia of reliability." *Id.* at 231 (citing *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007)). This is the court's duty, not the defendant's. *Id.* If the PSR lacks sufficient indicia of reliability, "it is error for the district court to consider it at sentencing—*regardless* of whether the defendant objects or offers rebuttal evidence." *Id.* (emphasis added); *accord, e.g.*, *United States v. Johnson*, 648 F.3d 273, 277 (5th Cir. 2011) ("[W]ithout sufficient indicia of reliability, a court may not factor in prior arrests when imposing a sentence."); *United States v. Rodriguez*, 897 F.2d 1324, 1328 (5th Cir. 1990) ("[A]s [the defendant] presented no rebuttal evidence, the district court had discretion to adopt the [PSR]'s facts without more specific inquiry or explanation, *provided that* those facts had an adequate evidentiary basis." (emphasis added)). And a PSR does not redeem flawed facts merely by repeating them. *See Harris*, 702 F.3d at 230 n.2 (collecting cases).

Only *after* the district court verifies the PSR as reliable does the analysis shift to step two. *Id.* at 230. At that point, it becomes the defendant's burden to show that the facts contained within the PSR are "materially untrue, inaccurate or unreliable." *Id.* But, of course, the burden never shifts to the defendant if the PSR lacks sufficient indicia of reliability in the first place. *Id.* The district court skipped over that critical step-one inquiry.

## III.

This is a step-one case that should break in Gipson's favor. The PSR's preponderance assertion that Gipson was the kidnapper was not sufficiently

No. 17-10753

reliable. Absent independent inquiry into the statements that acknowledged doubts of Gipson's guilt as to kidnapping, it was "error for the district court to consider" the PSR's allegation about the no-billed arrest "regardless of whether the defendant object[ed] or offer[ed] rebuttal evidence." *Id.* at 231.

## A.

Detail, consistency, and corroboration are the hallmarks of a reliable PSR. *See United States v. Nava*, 624 F.3d 226, 231–32 (5th Cir. 2010) (finding corroborated hearsay sufficient to warrant a sentencing enhancement); *United States v. Ortega-Calderon*, 814 F.3d 757, 762 (5th Cir. 2016) (PSR reliably showed a judgment of conviction when it attached unofficial but detailed records that "strongly corroborate[d] one another"). Bald, conclusory statements, on the other hand, "are not sufficiently reliable." *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013). A PSR fails this test if it proposes uncorroborated facts inconsistent with the evidence or the PSR's other statements. *See United States v. Davalos-Cobian*, 714 F. App'x 371, 374 (5th Cir. 2017) (PSR unreliable when it attributed *crystal* meth to a dealer-defendant when (1) wiretapped calls between the defendant and his buyer discussed only "*liquid* methamphetamine" and (2) "the PSR state[d]" elsewhere that the buyer "had issues converting the methamphetamine received from [the defendant] to crystalline form" (emphasis added)); *United States v. Simmons*, 964 F.2d 763, 775–76 (8th Cir. 1992) (PSR unreliable when it estimated drug quantity based on "information [that] was developed at trial" through testimony of a person who gave inconsistent accounts and may have had an impaired memory).

These principles vitally apply to a PSR's assertions about past arrests that did not lead to convictions. All courts agree that a "bare arrest record" reflecting "[t]he mere fact of an arrest, by itself," is insufficient. *Harris*, 702

8

No. 17-10753

F.3d at 229; *accord Johnson*, 648 F.3d at 277–78. At minimum, a PSR must provide *some* account of what the defendant did. *See Harris*, 702 F.3d at 230–31 & n.1. But "a factual recitation of the defendant's conduct" is no silver bullet; the sentencing court must still "determine whether that factual recitation has an adequate evidentiary basis with sufficient indicia of reliability." *Id.* at 231; *accord Zuniga*, 720 F.3d at 591.

## B.

The PSR's counterfactual assertion—that Gipson more likely than not committed kidnapping—suffers from various infirmities. Taken together, these tensions so undermine the convincing force of proof that Gipson was the kidnapper that the district court was obligated to probe further. *See Harris*, 702 F.3d at 231.

For starters, the PSR contained powerful exculpatory statements. The supposed victim, who claimed to have been face-to-face with his assailants, could not identify Gipson and another accused kidnapper in a photo lineup.

Thus it is unsurprising that the probation office acknowledged that it lacked further evidence of Gipson's guilt.

And it is unsurprising that the government, in its discretion, declined to seek a variance based on Gipson's unconfirmed and uncharged conduct.

Nor is it hard to see why a Texas grand jury did not indict, because a "grand jury is to return a true bill when it determines that there is probable cause to believe that the accused committed the offense." *Harris Cty. Dist. Atty's Office v. R.R.R.*, 928 S.W.2d 260, 264 (Tex. App.—Houston [14th Dist.] 1996, no writ). It stands to reason that the grand jury lacked a reasonable basis to suspect that Gipson committed the kidnapping recounted in the PSR.

Finally, this may explain why the district court was careful not to second-guess the lack of a conviction, much less a prosecution. As the majority opinion

observes, the district court did not claim to conclude "that Gipson committed the *offense* of aggravated kidnapping." Majority Op. at 4. Instead, it "simply found by a preponderance of the evidence that Gipson committed a significant part of the activities that he was charged with"—i.e., that Gipson struck, stabbed, assaulted, and ransomed the alleged victim. *Id.*

But that is a distinction without a difference. Although the district court did not decree that Gipson committed the crime of "Aggravated Kidnapping," it still found that Gipson committed that crime's constituent elements: intentionally restraining someone with intent to hold him for ransom or by using a deadly weapon. *See* Tex. Penal Code § 20.04(a)–(b); *see also id.* § 20.01(1)–(2). Those are the same thing.

And even crediting that, as a matter of law, a no-bill "is merely a finding that the specific evidence brought before the particular Grand Jury did not convince them to formally charge the accused with the offense alleged," Majority Op. at 4 (quoting *Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996)),[2] what is important here is that a no-bill is *not* proof positive of guilt. The majority opinion's reliance on *Rachal v. State* prompts more questions than answers.[3] What evidence did the state present? Who testified? Did they contradict the PSR's factual account? Was there yet a third failed identification? What, precisely, were the "the activities that [Gipson] was charged with"? (On this score, the PSR offers conflicting answers.) Shrouding

---

[2] *But cf.* Tex. Code Crim. Proc. art. 20.09 (requiring grand juries to "inquire into all offenses liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person"); *Harris Cty. Dist. Atty's Office*, 928 S.W.2d at 264.

[3] *Rachal* held that "misconduct left unadjudicated because the evidence may possibly be insufficient to formally indict" is admissible "during the sentencing stage of a capital murder trial[] if it is clearly proven, relevant, and more probative than prejudicial." 917 S.W.2d at 807.

the PSR's preponderance assertion with more mystery hardly bolsters its credibility.

These infirmities underscore the district court's legal error at step one. In imposing an upward variance, the district court improperly relied on the PSR's preponderance assertion when it should have inquired further into the exculpatory evidence to resolve the determinative facts. *See* Fed. R. Crim. P. 32(i)(3). Even moving to step two, in comparing the district court's preponderance statement with the PSR's exculpatory statements I am still left with a "definite and firm conviction that a mistake has been committed." *Zuniga*, 720 F.3d at 590. Of course, the Government could have remedied both deficiencies, legal and factual, by offering more evidence (say, a witness to the kidnapping or a police officer). *See, e.g.*, *United States v. Hebert*, 813 F.3d 551, 560 (5th Cir. 2015). That the Government instead declined to prop up the kidnapping allegation is telling.

## IV.

When increasing a defendant's prison term because of uncharged conduct, a federal court must rely on more than a PSR's inconsistent, even exculpatory, statements about an arrest that failed to pass muster the only time it faced independent scrutiny in a state's criminal justice system. I would vacate and remand for resentencing.

I respectfully dissent.