# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2023

Lyle W. Cayce
Clerk

―――――――――

No. 22-50204

―――――――――

United States of America,

*Plaintiff—Appellee*,

*versus*

Cory Joe Barton,

*Defendant—Appellant*.

―――――――――――――――――――――――

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:21-CR-37-1

―――――――――――――――――――――――

Before King, Jones, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Cory Joe Barton appeals his sentence of 335 months' imprisonment for conspiracy to possess with intent to distribute at least 500 grams of methamphetamine. For the following reasons, we AFFIRM.

On April 13, 2021, Cory Joe Barton was indicted for conspiracy to possess with intent to distribute and conspiracy to distribute at least 500

―――――――――――――――――――

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

grams of a mixture or substance containing a detectable amount of methamphetamine, pursuant to 21 U.S.C. § 841(a)(1). Barton pleaded guilty on July 13, 2021. On September 29, 2021, the United States Probation Office submitted an addendum revising the Presentence Investigation Report (the "PSR"). The PSR states that Barton was arrested on November 11, 2020, while in possession of approximately one kilogram of methamphetamine. The PSR also states that, during a proffer with the FBI, a methamphetamine distributor, Oscar Negrete, identified Barton as an individual to whom he had sold methamphetamine on multiple occasions. Negrete estimated that he had provided Barton with "15 kilograms, probably more" of methamphetamine. The PSR states that an analysis of the methamphetamine found in Barton's possession was determined to be 77 percent pure, resulting in 713 grams of methamphetamine (actual). The PSR also estimates the purity of the 15 kilograms of methamphetamine Negrete claimed to have sold Barton based on purity tests that had been conducted on methamphetamine seized by law enforcement from another dealer who had been purchasing methamphetamine from Negrete. The PSR calculates that the average purity of this seized methamphetamine was 88 percent, resulting in 13.2 kilograms of methamphetamine (actual). According to the PSR, Barton should be held accountable for 13.91 kilograms of methamphetamine (actual), adding both methamphetamine (actual) amounts that it attributes to him. Relying, in part, on the methamphetamine it says is attributable to Barton, the PSR calculates that he should be subject to an imprisonment range of 292 to 365 months based on the sentencing guidelines. At sentencing, the district court accepted the PSR's findings and sentenced Barton to 335 months' imprisonment.

Barton raises two issues on appeal, both relating to the reliability of facts on which the district court relied in imposing its sentence. We review the district court's factual findings for clear error. *United States v. Barfield*, 941 F.3d 757, 761 (5th Cir. 2019). "There is no clear error if the district

court's finding[s] [are] plausible in light of the record as a whole." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (quoting *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (per curiam)). "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013) (quoting *United States v. Harris*, 702 F.3d 226, 230 (5th Cir.2012)). "If the factual recitation [in the PSR] lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence." *Id.* (alteration in original) (quoting *Harris*, 702 F.3d at 231). "But if the factual recitation in the PSR bears sufficient indicia of reliability, then the 'defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it.'" *Id.* (quoting *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir.2009)). "Mere objections to [a PSR's] supported facts are generally insufficient." *Harris*, 702 F.3d at 230.

*First*, Barton argues that there is no factual basis to connect him with the additional 15 kilograms of methamphetamine. Specifically, he contends that the PSR was improperly revised "outside the regular order of the presentence investigation report process" to include those facts concerning the additional 15 kilograms of methamphetamine. According to Barton, these facts should not have been considered by the district court as they only became part of the PSR through a faulty revisionary process. But Barton fails to identify how that process was in error. "At least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them." Fed. R. Crim. P. 32(g). Contrary to Barton's reading, this rule did not prohibit the United States Probation Office from revising the PSR on

its own. And Barton was still afforded an opportunity to object to the PSR in accordance with this rule; indeed, the PSR notes Barton's objection to it calculating the methamphetamine's purity. Accordingly, the method by which these facts were added to the PSR does not taint their reliability. The facts connecting Barton to the 15 kilograms of methamphetamine bear sufficient indicia of reliability as well. The PSR makes this connection based on Negrete's statements that he sold Barton methamphetamine on multiple occasions, which eventually amounted to "15 kilograms, probably more." An FBI special agent later confirmed this information at Barton's sentencing hearing. The burden was thus on Barton to present rebuttal evidence— beyond an objection—which he did not do. *See Zuniga*, 720 F.3d at 591. Therefore, the district court did not err in relying on the PSR.

*Second*, Barton asserts that the factual bases underlying the PSR's purity calculations are deficient. Similar to his previous argument, Barton contends that all facts concerning the purity of methamphetamine that were added to the PSR during its revision should be discounted. Barton also challenges the methodology by which the PSR estimated the purity of the 15 kilograms of methamphetamine. As we have already ruled, there was no error in how the PSR was revised. There are also sufficient indicia of reliability underlying the PSR's purity calculation. "A district court may estimate drug quantity." *United States v. Lee*, 966 F.3d 310, 327 (5th Cir. 2020). "It can base its findings on 'any information that has "sufficient indicia of reliability to support its probable accuracy," including a probation officer's testimony, a policeman's approximation of unrecovered drugs, and even hearsay.'" *Id.* (quoting *United States v. Betancourt*, 422 F.3d 240, 247 (5th Cir. 2005)). Here, the PSR estimates the purity of the 15 kilograms of methamphetamine based on the purity of methamphetamine seized from an associate of Barton, Ethan Eli Tinney, who was also being supplied by Negrete during the period of Barton's offending conduct. Specifically, the PSR calculates the average

No. 22-50204

purity of methamphetamine seized from Tinney on three separate occasions, calculating an average purity of 88 percent and imputing this purity level to the 15 kilograms of methamphetamine it attributes to Barton. This estimation is supported by the record, including the facts presented in the PSR and their verification through the testimony provided by the FBI special agent at Barton's sentencing hearing. Barton fails to rebut these facts; consequently, we conclude that the court's findings were not a product of clear error.

AFFIRMED.