# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
May 22, 2019

Lyle W. Cayce
Clerk

No. 17-11403

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JASON LEE RANDALL,

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and SOUTHWICK and ENGELHARDT, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge:

Having entered a guilty plea to a four-count indictment charging him with production, transportation, and possession of child pornography, as well as committing a felony offense involving a minor while being required to register as a sex offender, all in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(1), 2252A(a)(5)(B), and 2260A, Jason Lee Randall appeals his sentence of imprisonment. Specifically, Randall challenges, on plain error review, the procedural correctness of the district court's calculation of his total offense level. Finding plain error in the district court's offense level calculation, we VACATE Randall's sentence and REMAND for re-sentencing consistent with this opinion.

No. 17-11403

I.

With respect to the production count (Count I), Randall admitted that he used an alias, pretending to be a minor female, and asked Jane Doe 5 (JD5), a 10-year-old female, to create a visual depiction of herself engaging in sexually explicit conduct. JD5 complied and sent the depiction to Randall. JD5, however, was by far not Randall's only victim. Rather, according to the presentence report (PSR), which the district court adopted as modified,[1] an investigation revealed that Randall, a registered sex offender, had held himself out as a 12-year-old female on various social media platforms and messaging services, while encouraging other minor females to "exchange" nude and sexually explicit photographs and videos.[2] *See* PSR ¶¶ 13-23.

Officers determined that Randall solicited and distributed sexually graphic images and videos on several platforms with a number of prepubescent minor females and was aware that he was communicating with minors. *Id.* at ¶¶ 26-27, 30. As part of the investigation, law enforcement officials were able to confirm the identity of 16 prepubescent minor females, including JD5, the subject of the production count in the indictment.[3] *Id.* at ¶ 31.

The probation officer also confirmed that "during his communications with the victims, Randall sent images and videos depicting the sexual abuse of minors, to include prepubescent [*sic*] in an effort to persuade each victim to produce the same." *Id.* at ¶32. The communications included Randall's distribution of a video depicting JD5, engaged in a sex act, to Jane Doe 6 (JD6) and an as-yet-unidentified victim, in an effort to convince them to produce

---

[1] The PSR was modified to correct the statutory sentence for Count I. *See* note 6, *infra.*

[2] In an interview with police, Randall admitted to using a username created by a friend so that he would not have to report the account to his probation officer. *See* PSR ¶ 30.

[3] A description of Randall's communications with the known victims is included in the PSR. *Id.* at ¶¶ 33-41.

## No. 17-11403

additional videos. *Id.* The probation officer's own review also confirmed that, in addition to JD5, Randall's direct messages with five of the prepubescent victims—Jane Doe 3 (JD3), Jane Doe 4 (JD4), Jane Doe 7 (JD7), Jane Doe 9 (JD9), and Jane Doe 10 (JD10)—showed that the victims had produced sexually graphic videos or images at his instruction. *Id.* at ¶ 45.

## II.

In calculating Randall's offense level under the United States Sentencing Guidelines, the probation officer grouped the transportation and possession counts (Counts II and III) together for sentencing purposes and determined their adjusted offense level to be 40. *Id.* at ¶¶ 59, 61–70. The production count involving JD5 (Count I), considered separately, also yielded an adjusted offense level of 40. *Id.* at ¶¶ 59, 71–78. Additionally, reasoning that, under U.S.S.G. § 2G2.1(d)(1), the offense level for an exploitation offense involving more than one minor should be calculated as if each minor resulted in a separate count of conviction and, according to application note 7 to § 2G2.1, multiple counts involving the exploitation of minors are *not* to be grouped together under U.S.S.G. § 3D1.2, the probation officer included separate offense level calculations for "pseudo counts" of child pornography production for JD3, JD4, JD7, JD9, and JD10. *Id.* at ¶ 60. The five pseudo counts, reflecting conduct not charged in the indictment, had adjusted offense levels of 38 and 42. *Id.* at ¶¶ 79–115.

Next, applying a multiple count adjustment to the seven offense "groups," pursuant to § 3D1.4, the probation officer added five levels to the highest adjusted offense level of 42, resulting in a combined adjusted offense level of 47. *Id.* at ¶¶ 116–19.[4] Finally, although a three-level reduction for

---

[4] The procedure for determining the combined offense level for multiple counts is set forth in U.S.S.G. §3D1.1.

acceptance of responsibility subtracted from a combined adjusted offense level of 47 would otherwise yield a total offense level of 44, Randall's total offense level was 43–the highest possible level provided for by Chapter 5 of the Sentencing Guidelines. *Id.* at ¶¶ 121–23; *see* U.S.S.G § 3E1.1; U.S.S.G. Ch. 5, Pt. A, cmt. (n.2).[5]  A total offense level of 43, combined with a criminal history category of III, produced an advisory Sentencing Guidelines range of life imprisonment for the three pornography charges. *Id.* at ¶¶ 136, 171; *see* U.S.S.G. Ch. 5, Pt. A.

By statute, however, Randall's pornography production conviction subjected him to a sentencing range of 25–50 years for Count I.[6]  *See* 18 U.S.C. § 2251(e). The statutory imprisonment ranges for the transportation (Count II) and possession (Count III) offenses were 15–40 years and 10–20 years, respectively. *See* 18 U.S.C. §§ 2252A(b)(1) & (2). Finally, the term of imprisonment for the sex offender registration offense (Count IV) was 10 years to be served consecutively to any other sentence imposed.  *See* 18 U.S.C. § 2260A.  Having  calculated the applicable Guidelines sentencing range for Counts I–III to be life imprisonment, the district court imposed non-Guidelines

---

[5]  Application note 2 of the Sentencing Table Commentary provides:
> In rare cases, a total offense level of less than 1 or more than 43 may result from application of the guidelines.  A total offense level of less than 1 is to be treated as an offense level of 1.  An offense level of more than 43 is to be treated as an offense level of 43.

U.S.S.G. Ch. 5, Pt. A, cmt. (n.2)

[6]  In the court below, Randall's sole objection to the PSR was his assertion that the probation officer incorrectly determined that his criminal history included multiple prior child pornography convictions, subjecting him to a statutory sentencing range of 35 years to life imprisonment for the production offense (Count I).  Randall  maintained that his five prior convictions should instead count as a single prior conviction for purposes of 18 U.S.C. § 2251(e), resulting in a statutory range of only 25–50 years. *See* § 2251(e).  The Government agreed, and the district court sustained the objection. Thus, the lifetime range of imprisonment applicable under the Sentencing Guidelines was, of course, subject to the statutory maximum of 50 years.

concurrent sentences of 35 years for the production offense (Count I), 20 years for the transportation offense (Count II), and 10 years for the possession offense (Count III), with a consecutive sentence of 10 years for the sex offender registration offense (IV), reasoning that a lifetime sentence was more than what is necessary to accomplish the objectives of 18 U.S.C. § 3553(a). Further, the court noted, given the aggregate sentence of 45 years, Randall would be in jail for most of his remaining natural life.  Accordingly, the court concluded, the sentence imposed would be an adequate deterrent to further criminal conduct. The court also imposed a supervised release term of 15 years.  This appeal followed.

### III.

Where a defendant preserves a procedural sentencing error, such as a Sentencing Guidelines calculation, by objecting before the district court, we review the sentencing court's factual findings for clear error and its interpretation or application of the guidelines de novo. *United States v. Velasco*, 855 F.3d 691, 693 (5th Cir. 2017) (internal quotation marks and citations omitted); *United States v. Gomez–Alvarez,* 781 F.3d 787, 791 (5th Cir. 2015).   If established, such error shall nevertheless be disregarded if it is harmless, i.e., if it does not affect substantial rights. FED. R. CRIM. P. 52 (a). For unpreserved sentencing objections, however, Federal Rule of Criminal Procedure 52(b) establishes a "plain error" standard. FED. R. CRIM. P.  52 (b) ("A plain error that affects substantial rights may be considered even though it was not brought to the [district] court's attention.").

Under either standard, a claimed error must "affec[t] substantial rights" to warrant relief on appeal. FED. R. CRIM. P. 52. The primary difference between the two standards is that, under harmless error review, the burden is on the Government to prove that an error did *not* affect the defendant's substantial rights, whereas under plain error review, the defendant has the

burden of proving that an error *did* impact his substantial rights. *United States v. Olano*, 507 U.S. 725, 734–35 (1993). The plain error rule "serves a critical function by encouraging informed decisionmaking and giving the district court an opportunity to correct errors before they are taken up on appeal." *United States v. Peltier*, 505 F.3d 389, 392 (5th Cir. 2007).

In *Olano*, the Supreme Court established three conditions to be met before an appellate court may consider exercising its discretion to correct the error. First, there must be an error that has not been intentionally relinquished or abandoned. *Olano*, 507 U.S. at 725. A "'[f]ailure to calculate the correct Guidelines range constitutes procedural error.'" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) (quoting *Peugh v. United States*, 569 U.S. 530, 537 (2013)). Second, the error must be plain—that is to say, clear or obvious." *Olano*, 507 U.S. at 725. An error is not "clear or obvious" if it is "subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Third, the error must have affected the defendant's substantial rights." *Molina–Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016). To satisfy this third condition, the defendant ordinarily "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id.* (internal quotation marks omitted). In *Molina–Martinez,* the Court recognized that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." 136 S. Ct. at 1345. In other words, an error resulting in a higher range than the Guidelines otherwise would provide usually establishes a reasonable probability that a defendant will serve a prison sentence that is more than "necessary" to fulfill the purposes of incarceration. *Rosales-Mireles,* 138 S. Ct.

No. 17-11403

at 1907 (citing 18 U.S.C. § 3553(a); *Tapia v. United States,* 564 U.S. 319, 325 (2011)).

A defendant may not carry his plain error burden, however, if the sentencing court nevertheless concluded the chosen sentence was appropriate regardless of the correct Guidelines range or the sentence was based "on factors independent of the Guidelines." *Molina-Martinez*, 136 S. Ct. at 1346–47; *see also United States v. Hott,* 866 F.3d 618, 621 (5th Cir. 2017) (plain error review unsatisfied where record showed district court thought the chosen sentence appropriate irrespective of the Guidelines range and the defendant failed to show a reasonable probability of a different outcome); *United States v. Munoz-Canellas*, 695 Fed. App'x 748, 758 (5th Cir. 2017) ("[u]nder either a harmless-error or plain-error standard, we will not reverse a sentence if we are convinced that the district court would have imposed the same sentence, regardless of the error.")

Finally, if the first three plain error conditions are met, "the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Molina–Martinez,* 136 S. Ct. at 1343 (internal quotation marks omitted). In the ordinary case, the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings. *Rosales-Mireles,* 138 S. Ct. at 1911.

IV.

As his first ground for relief, Randall contends the district court committed plain error in applying U.S.S.G. § 2G2.1(d)(1) to create five "pseudo counts" of production of child pornography that were factored into the calculation of his total offense level.

7

No. 17-11403

That objection was not raised in the district court. In now making this assertion, Randall concedes that the Sentencing Guidelines allow courts to treat certain unadjudicated conduct as additional counts of conviction when a defendant has exploited more than one minor.  In the absence of a stipulation, however, he maintains that such "pseudo counts" must qualify as "relevant conduct" to the offense of conviction and, based on the information set forth in the PSR and in his factual resumé, there is no evidence demonstrating that his behavior with JD3, JD4, JD7, JD9, and JD10 constituted relevant conduct to his production offense involving JD5. *See* U.S.S.G. § 1B1.2(c) (stipulation regarding additional counts); § 1B1.3 (defining "relevant conduct"); §2G2.1(d)(1) and cmt. (n.7) (relevant conduct of an "offense of conviction"). Thus, he contends error exists.

Randall further contends that the error was clear or obvious in light of the pertinent Sentencing Guidelines and their commentary, and affected his substantial rights, because, without the five "pseudo counts," his aggregate 45-years (540 months) sentence would *exceed* the applicable advisory guidelines range,  rather than constituting a downward variance from a life imprisonment range. Finally, he urges that this court to find that the error affected the fairness, integrity, and public reputation of the judicial proceedings.

The Government contests the existence of reversible error relative to the "pseudo counts," asserting that Randall obtained explicit images of juvenile victims, such as JD5, then used those images to induce other minors to send more images.  Additionally, emphasizing § 2G2.1's commentary explicitly authorizing the court to consider relevant conduct, if more than one victim was exploited, regardless of whether that victim was named in the indictment, the Government maintains Randall's inducement of child pornography from other victims was relevant to the conduct underlying the production count. That is, the Government argues, a preponderance of the evidence supports a conclusion

that the district court relied on a proper definition of relevant conduct when it included the "pseudo counts" in Randall's offense level calculation. Alternatively, the Government contends, even if the "pseudo counts" instead were excluded, the record indicates that the district court nonetheless would have imposed the same sentence.

In reply, Randall maintains that there is no evidence in the record demonstrating that he used the image of JD5, the victim associated with his production offense of conviction (Count I), to obtain the images from the "pseudo count" victims, or that he used the images of the "pseudo count" victims to obtain the images from JD5. In the absence of such evidence, he contends the requisite relevant conduct of the "offense of conviction" is lacking.

We agree. While it may have been permissible for the sentencing judge to consider the conduct underlying the "pseudo counts" in determining a "Guidelines sentence,"[7] it was *not* permissible to do so in the particular manner employed here.[8] Specifically, U.S.S.G. § 2G2.1 (providing rules for calculating the offense level for the production of pornography involving minors, i.e., "child pornography"), together with the "Multiple Counts" provisions of Chapter 3,

---

[7] As utilized herein, a "Guidelines sentence" refers to a sentence determined pursuant to the advisory provisions of the Sentencing Guidelines Manual, as opposed to a "non-Guidelines sentence" (or sentencing variance) imposed based on the factors set forth in 18 U.S.C. § 3553(a). The uncharged conduct, if established by a preponderance of the evidence, seemingly could provide a basis for a lawful non-Guidelines sentence under 18 U.S.C. §3553(a). The instant issue on appeal, however, involves the proper application of the Sentencing Guidelines in calculating the defendant's offense level for purposes of determining a "Guidelines sentence."

[8] For instance, § 4A1.3 authorizes an upward departure in assigning a defendant's criminal history category, where reliable information indicates the defendant's otherwise applicable criminal history category substantially underrepresents the seriousness of his criminal history or the likelihood he will commit other crimes. *See* U.S.S.G. § 4A1.3 and § 1B1.1 cmt. (n.1(E)). Additionally, § 5K2.0 authorizes an upward departure from the otherwise applicable guideline range if certain aggravating circumstances exist of a kind or to a degree not adequately taken into account by the Sentencing Commission in formulating the guidelines. *See* U.S.S.G. § 5K2.0

Part D of the Sentencing Guidelines,[9] dictate when multiple minor victims are to be considered separately (rather than grouped together per § 3D1.2) for purposes of calculating a defendant's combined offense level under § 3D1.4. Under those provisions, multiple counts involving the exploitation by production of different minors are *not* grouped together for purposes of §3D1.2. *See* U.S.S.G. § 2G2.1(d), and cmt. (n.7); U.S.S.G. § 3D1.2. The same is true where the relevant conduct of a single production offense of conviction includes more than one victim, regardless of whether multiple minors are cited in the count of conviction or not, such that each minor shall be treated as if contained in a separate count of conviction. *See* U.S.S.G. § 2G2.1(d), cmt. (n.7).

Accordingly, because here the only production "count of conviction" for purposes of § 2G2.1 is Count I of the indictment, involving a single minor (JD5), the question becomes whether the pornography productions identified in the five "pseudo counts" constitute "relevant conduct" of the "offense of conviction" set forth in Count I. If so, each of the "pseudo counts" also may be considered separately for purposes of determining the combined adjusted offense level under § 3D1.4. [10]

The term "offense" is defined in the Sentencing Guidelines as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." *See* U.S.S.G. § 1B1.1, cmt. (n.1(I)). "Relevant conduct" is defined in § 1B1.3. Pursuant to § 1B1.3(a)(1)(A), to qualify as relevant conduct, the

---

[9] The "Introductory Commentary" to Chapter Three, Part D–Multiple Counts, of the Sentencing Guidelines Manual explains that Part D "provides rules for determining a single offense level that encompasses all of the counts of which a defendant is convicted. . . . The single 'combined' offense level that results from applying these rules is used, after adjustment pursuant to the guidelines in subsequent parts, to determine the sentence." U.S.S.G. Ch. 3 Part D, intro. cmt.

[10] *See* U.S.S.G. § 2G2.1(a) cmt. (n.7).

defendant's conduct must have "occurred *during* the commission of the *offense of conviction*, in *preparation* for that offense" or "in the course of *attempting to avoid detection or responsibility* for that offense."[11] *See* U.S.S.G. § 1B1.3 (emphasis added). The parties dispute whether the requirements of §1B1.3(a)(1)(A) are satisfied.  On the limited record presently before us, however, Randall has the better argument in contending that none of the conduct underlying the uncharged "pseudo counts" involving <u>Jane Does 3, 4, 7, 9 and 10,</u>[12] as set forth in the PSR, bear the necessary connection, required by § 1B1.3(a)(1)(A), with the production conduct (involving <u>Jane Doe 5</u>) that is the "*offense of conviction*" actually charged, as Count I, in the indictment.

The parties likewise dispute whether the requirements for the "same course of conduct or common scheme or plan as the *offense of conviction*" definition of "relevant conduct," in § 1B1.3(a)(2), have been satisfied.  Again, on the present record,  Randall's position prevails.   Specifically, for purposes of  § 1B1.3(a)(2), "relevant conduct" is limited to "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts."[13]  As discussed above,  however, § 2G2.1 and § 3D1.2(d) expressly *exclude* § 2G2.1 production offenses from § 3D1.2(d) grouping.  As a result, § 2G2.1 production offenses

---

[11]  Although another subsection of § 1B1.3 includes conduct within jointly undertaken criminal activity, that provision is not at issue in the instant case. *See* U.S.S.G. §1B1.3(a)(1)(B).  Subsection (a)(4) also is inapplicable. U.S.S.G. § 1B1.3(a)(4) ("any other information specified in the applicable guideline").

[12]  For purposes of the offense level calculation, the five uncharged "pseudo counts" of child pornography production are set forth in ¶¶ 79–115 of the PSR; the single actual count of conviction (Count I of the indictment) appears in ¶¶ 71–78 of the PSR.

[13]  Application note 5(A) to U.S.S.G. § 1B1.3 confirms: "Offenses of a character for which § 3D1.2(d) would require grouping of multiple counts," as used in subsection (a)(2), applies to offenses for which grouping of counts would be required under § 3D1.2(d) *had the defendant been convicted of multiple counts. See* U.S.S.G. § 1B1.3, cmt. (n.5 (A)) (emphasis added).

cannot qualify as "relevant conduct of the *offense of conviction*") pursuant to § 1B1.3(a)(2).

Finally, absent the application of § 1B1.3(a)(1)(A) or § 1B1.3(a)(2), the resulting harm addressed in § 1B1.3(a)(3) likewise is inapplicable. *See* U.S.S.G. § 1B1.3(a)(3) ("all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions"). Accordingly, given the foregoing, we must conclude the instances of child pornography production, involving Jane Does 3, 4, 7, 9, and 10, that are set forth in the five "pseudo counts," cannot be treated as if contained in *separate* additional counts of conviction for purposes of § 2G2.1(d)(1) and application note 7, and calculating Randall's combined adjusted offense level under §§ 3D1.1 and 3D1.4. And, as such, error occurred in the district court's calculation of Randall's total offense level. Having determined error occurred, we are left with the question of whether the error is plain.

We are unaware of a *published* opinion from this court addressing this particular sentencing issue, i.e., applying § 2G2.1(d)(1) to create "pseudo counts" to account for additional uncharged victims in calculating a defendant's combined offense level under § 3D1.4. Another panel, however, did consider it, on plain error review, in an *unpublished* decision. *See United States v. Hesson,* 46 Fed. App'x 226, 2002 WL 1940059 (5th Cir. 2002). In *Hesson*, plain error was found. The district court's sentence was not set aside, however, because the panel concluded the sentencing judge imposed the statutory maximum sentence based on factors *other than* the erroneous application of §§ 1B1.3, 2G2.1(c)(1) and 3D1.4. *See Hesson*, 2002 WL 1940059 at *3-4. The factors providing the basis for an upward departure, pursuant to § 5K2.0, included the large number of minors that Hesson had exploited, the many years the exploitation had occurred, and his extensive videotaping and

No. 17-11403

documentation of his offenses. *Id.* at *4. Because the unpublished *Hesson* decision was issued *after* January 1, 1996, the opinion is *not* precedent. *See* 5th Cir. R. 47.5.4. Nevertheless, its analysis is both helpful and persuasive.

Outside this circuit, the Sixth Circuit has addressed the issue but not on plain error review. *See United States v. Schock,* 862 F.3d 563, 565-69 (6th Cir. 2017) (vacating the sentence because the timing of the incidents indicated that the uncharged conduct did not occur "during" the offense of conviction); *United States v. Weiner,* 518 F. App'x 358, 363-66 (6th Cir. 2013) (same).

In this instance, determining that error occurred in the district court's calculation of Randall's offense level requires careful parsing of the Sentencing Guidelines Manual, along with, and in the context of, the limited record information available on appeal, particularly as set forth in the indictment, the factual resume, the PSR, and the sentencing transcript. To this mix, we add the prosecution's decision to charge only one production count encompassing only a single victim in the indictment, despite the existence of evidence of similar violations involving numerous other prepubescent victims occurring in some instances within only a day or two. Nevertheless, we are satisfied that the error is sufficiently obvious such that it would not have occurred if the issue would have been raised before and properly argued to the able district judge. Thus, the error is plain.[14]

---

[14] As noted, but not urged, by the Government, we have held, on several occasions, that questions of fact capable of resolution by the district court, upon proper objection at sentencing, cannot constitute plain error. *See e.g., United States v. Lopez,* 923 F.2d 47, 50 (5th Cir. 1991). Errors occurring in the application of the guidelines to undisputed facts and circumstances, however, are legal error and susceptible to plain error review. *See United States v. Campo-Ramirez,* 379 Fed. App'x 405 (5th Cir. 2010) (citing *United States v. Anviso-Mata,* 442 F.3d 383, 385 (5th Cir. 2006)). Moreover, although the court may rely on facts in the PSR to which there is no objection or rebuttal, *see e.g., United States v. Rodriguez,* 558 F.3d 408, 412 (5th Cir. 2009), the PSR here does not include facts evidencing the necessary linkage with the offense of conviction that is required by § 1B1.3(a)(1)(A). To conclude

## No. 17-11403

Turning to the third prong of the plain error standard—a violation of substantial rights—recent guidance from the Supreme Court suggests this requirement likewise is satisfied. As stated above, "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." 136 S. Ct. at 1345.

On this point, the Government argues Randall's substantial rights were not violated because the district court, while acknowledging the egregiousness of Randall's offenses and his recidivism, imposed an aggregate 45 years (540 months) *non-Guidelines* (downward variance) sentence,[15] which was well below the aggregate sentence 70 years (840 months) sought by the Government. Further, the district judge's written statement of reasons indicates that he "[did] not believe that a Guidelines sentence is necessary to accomplish the objectives of 3553(a)(2)."

Nevertheless, as noted by the district court, an aggregate sentence of 45 years would result in Randall being "in custody for most of his remaining natural life."[16] Importantly, moreover, Randall's Guidelines range, as calculated in the PSR, was life imprisonment, subject to a statutory maximum sentence of 50 years. As such, the district court's variance below that range is neither surprising nor particularly instructive as to the sentence that would

---

otherwise requires speculation rather than reasonable reliance on pertinent factual information contained in the PSR and/or the remainder of the record.

[15] The aggregate sentence of 45 years of imprisonment consists of concurrent sentences for Counts I–III (35 years for Count I, 20 years for Count II, and 10 years for Count III), followed by the consecutive sentence of 10 years for Count IV.

[16] The PSR reflects that Randall was 33 years old at the time of his July 2017 sentencing.

be imposed if the Guidelines range were calculated without the five pseudo counts.

Randall contends the new Guidelines range, calculated with a total offense level of 39 and criminal history category of III, would be 324–405 months (for Counts I–III) (totaling 444–525 months with the addition of the consecutive 10 years sentence for Count IV). In any event, it likely would be substantially less than life imprisonment and, absent an *upward* variance, less than the 45 years (540 months) aggregate sentence previously imposed, or the 35 years (420 months) concurrent sentence imposed for Count I. Accordingly, on these facts, the erroneous inclusion of the "pseudo counts" in the offense level calculation is sufficient to show at least a reasonable probability of a different outcome absent the error.

Lastly, relative to the discretionary nature of plain error relief, the court "should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Molina–Martinez,* 136 S. Ct. at 1343. According to the Supreme Court's recent pronouncement: "In the ordinary case, [] the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Rosales-Mireles*, 138 S. Ct. at 1911.

Considering that the Guidelines range resulting from the district court's offense level calculation was life imprisonment, with an aggregate sentence of 45 years having been imposed, and that the appropriate remedy is re-sentencing, which can be accomplish fairly quickly and without extraordinary expense, this court should exercise its discretion to remedy the calculation error. As aptly recounted by the Supreme Court, in *Rosales-Mireles*:

> "To a prisoner," this prospect of additional "time
> behind bars is not some theoretical or mathematical

> concept." *Barber v. Thomas*, 560 U.S. 474, 504, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010) (KENNEDY, J., dissenting). "[A]ny amount of actual jail time" is significant, *Glover v. United States*, 531 U.S. 198, 203, [] (2001), and "ha[s] exceptionally severe consequences for the incarcerated individual [and] for society which bears the direct and indirect costs of incarceration," *United States v. Jenkins,* 854 F.3d 181, 192 (C.A.2 2017).

138 S. Ct. at 1907. Moreover, addressing the calculation issue would provide clarity and certainty regarding sentencing procedures in this circuit for the benefit of the district courts, prosecutors, defense counsel, criminal defendants, and probation officers.[17]  Accordingly, we VACATE Randall's sentence and REMAND for re-sentencing consistent with this opinion.[18]

---

[17] As suggested in notes 7 and 8, *supra*, today's decision does not determine whether or not the same sentence of imprisonment may lawfully be imposed—pursuant to alternative Guidelines provisions or the sentencing factors set forth in 18 U.S.C. § 3553(a). We leave that decision to be addressed, in the first instance, by the able district court upon re-sentencing. In any event, however, to facilitate appellate review of sentences, we urge all sentencing courts to appropriately detail the factual and legal bases of their sentences, whether imposed pursuant to, outside of, or as an alternative to the Sentencing Guidelines provisions. Thus, if a particular sentence is thought to be appropriate irrespective of the Guidelines calculation or applicable range, such that the same sentence would be imposed in the absence of any error therein, that determination should be clearly and unequivocally communicated to the defendant at sentencing and reflected in the court's record.

[18] Randall's second issue raised on appeal contests whether the three-level acceptance of responsibility downward adjustment should be applied before or after the combined adjusted offense level is reduced to its maximum permissible level of 43. *See* Ch. 4 Pt. A. cmt. (n. 2) ("offense level of more than 43 . . . treated as offense level of 43'). This issue is foreclosed by our decision in *United States v. Wood*, No. 94-10217, 1995 WL 81100 (5th Cir. Feb. 5, 1995)(unpub.), which is binding on this court. *Zenor v. El Paso Healthcare Sys., Ltd.,* 176 F.3d 847, 854 (5th Cir. 1999); 5TH CIR. R. 47.5.3. But, given  our resolution of his first issue on appeal, we do not find it necessary to consider the second issue at this time.