# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 7, 2023

Lyle W. Cayce
Clerk

No. 22-51060

United States of America,

*Plaintiff—Appellee*,

*versus*

Jeronimo Alas-Ayala,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:22-CR-533-2

_____

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.
Per Curiam:[*]

Appellant Jeronimo Alas-Ayala ("Alas-Ayala") appeals the district court's sentence. For the reasons explained below, we AFFIRM.

## I. Background

On June 22, 2022, the United States Border Patrol ("USBP") encountered nine individuals, including Alas-Ayala, in the area known to agents as High Lonesome Mountain in Culberson County, Texas, near the United

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-51060

States border with Mexico. All nine individuals were citizens of Mexico and admitted they were in the United States illegally.

During the immigration inspection, agents noticed strap marks on their shoulders, indicating they may have been carrying heavy backpacks. Approximately 250 feet away from where the group was detained, the USBP agents found ten burlap backpacks hidden in the brush. The backpacks contained bundles of marijuana, weighing a total of 273.82 kilograms. Agents transported the group back to the station for processing.

Two members of the group—including a boy named "Luis"—were minors and released back to Mexico. The Drug Enforcement Administration ("DEA") agents interviewed the seven remaining men, four of whom (including Alas-Ayala) were related to each other. The interviews of Alas-Ayala and another member of the group, Arturo Gonzalez-Terrazas ("Gonzalez-Terrazas"), are the most relevant for the purpose of this appeal.

Alas-Ayala admitted to having carried between 20 to 25 kilograms of marijuana, for which he would be paid 40,000 pesos (approximately $2,000) to bring from Mexico to Odessa, Texas. He claimed that he understood he would be smuggling the marijuana into the United States when he accepted the job, with the plan to return back to Mexico afterwards. Alas-Ayala explained that the group was supposed to walk to I-10, where they would be picked up. He also claims that the tenth member of the group, who was never apprehended, may have been the guide. The group crossed into the United States at Lomas De Arena, on the Mexico side. According to Alas-Ayala, this was his first time crossing into the United States.

Gonzalez-Terrazas also spoke to DEA agents. He reported that he first met Alas-Ayala three days before the trip. He said that Alas-Ayala told him about the "trips" into the United States carrying backpacks filled with marijuana. He said that Alas-Ayala gave him the impression that the trip was

2

easy to do and said that it paid well. Gonzalez-Terrazas advised DEA agents that Alas-Ayala told him they always take bundles into the United States as a job. He asked Alas-Ayala if he could be invited on one of those trips. Three days after meeting Alas-Ayala, Gonzalez-Terrazas crossed into the United States with the group. He stated that the marijuana bundle he carried weighed approximately 25 kilograms and that he was going to be paid 20,000 pesos (approximately $1,000) for carrying the bundle into the United States.

All seven men, including Alas-Ayala and his three family members, were charged in the Western District of Texas with importing marijuana (Count 1) and aiding and abetting the possession with intent to distribute marijuana (Count 2). Alas-Ayala pleaded guilty to Count 2 without a written plea agreement, with the understanding that the government would later dismiss Count 1.

Alas-Ayala's cousin and co-defendant, Jose Manuel Ayala-Alas, pleaded not guilty and went to trial. Gonzalez-Terrazas testified at Jose's trial that defendant Alas-Ayala sent "Luis," a juvenile, to recruit him to participate in the marijuana smuggling venture. He testified that he would be paid 20,000 pesos. He further testified that Alas-Ayala had instructed him not to testify at the trial and to falsely say that "Luis" was the one who had recruited him. There is no evidence to suggest that Gonzalez-Terrazas lied or perjured himself during his testimony.

On November 28, 2022, the district court held Alas-Ayala's sentencing hearing. Alas-Ayala objected to the following calculations: (1) the four-level leadership role adjustment; (2) the two-level enhancement for his aggravated role in a drug case; (3) the two-level obstruction of justice enhancement; and (4) the failure to award him an acceptance of responsibility reduction. Alas-Ayala based a large part of his objections on the inaccuracy of the testimony of Gonzalez-Terrazas made during the

investigation and jury trial of Jose. The district court explained that it presided over Jose's trial a month earlier and that, in addition to remembering Gonzalez-Terrazas's testimony that Alas-Ayala recruited him, recalled that the probation officer attended the trial and took notes throughout the trial. The district court determined that the Presentence Investigation Report's ("PSR") summary of the testimony and facts were consistent with the court's recollection of the testimony. The district court thus overruled Alas-Ayala's objections. Adopting the guideline calculations in the PSR, Alas-Ayala was sentenced within the guideline range to 151 months imprisonment.  This appeal followed.

## II. Standard of Review

Where a defendant preserves a procedural sentencing error by objecting before the district court, we review the district court's application of the guidelines de novo and its factual findings for clear error. *United States v. Randall*, 924 F.3d 790, 795 (5th Cir. 2019). A factual finding that is plausible based on the record as a whole is not clearly erroneous. *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (citation omitted). This is especially true when the sentence enhancement is based, at least in part, upon the court's evaluation of witness credibility. *See United States v. Nixon*, 881 F.2d 1305, 1310 (5th Cir. 1989). This court defers "to the credibility determinations of the district court." *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (citation omitted).

## III. Discussion

### A. Aggravating Role Adjustment

Section 3B1.1(a) of the United States Sentencing Guidelines provides for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants." To qualify for an aggravating role adjustment, "the defendant must have been the

No. 22-51060

organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, cmt. n.2.

Alas-Ayala argues that the district court clearly erred in finding that he recruited Gonzalez-Terrazas. He claims that there are not enough facts to support a finding that Alas-Ayala was a "leader" or "organizer" under § 3B1.1. He argues that the court should not consider other facts supporting the aggravating role adjustment since the only ground stated in the PSR was the recruitment of Gonzalez-Terrazas.

The district court had presided over the trial of co-defendant Jose Manuel Ayala-Alas and recalled Gonzalez-Terrazas's statement that Alas-Ayala recruited him.[1] The district court recalled that the probation officer sat through the co-defendant's trial, took notes, and reviewed the discovery. In

---

[1] The district court may consider any information which bears "sufficient indicia of reliability to support its probable accuracy." *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002) (footnote omitted). "The district court's findings are not clearly erroneous if they are plausible in light of the record reviewed in its entirety." *Id.* (footnote omitted). The district court judge has wide discretion in the kind of information and source of information he considers in determining a sentence. *United States v. Ochoa*, 659 F.2d 547, 549 (5th Cir. 1981) (citing *Williams v. New York*, 337 U.S. 241, 246 (1949)). District courts often go outside the record and consider a defendant's past conduct and activities when fashioning a sentencing, *see Ochoa*, 559 F.2d at 549 (citation omitted), as well as rely on evidence, including hearsay evidence, without regard to admissibility under the Federal Rules of Evidence which govern a trial. *Solis*, 299 F.3d at 455 (citing *United States v. Huskey*, 137 F.3d 238, 291 (5th Cir. 1998)). And this court has held that district courts may rely on testimony given at a co-defendant's trial when considering a defendant's sentence. *See United States v. Hernandez-Ybarra*, 654 F. App'x 662, 663 (5th Cir. 2016) (district court did not err at sentencing in relying on testimony from a co-defendant's trial because such information was also detailed in the factual basis of the underlying case and the PSR); *cf. United States v. Garcia*, 797 F.3d 320, 323 (5th Cir. 2015) (holding that a district court must provide fair notice before relying on testimony from a separate criminal trial that was not contained in the PSR).

the PSR, the probation officer subsequently prepared a summary of the information gathered at trial. According to the PSR, Gonzalez-Terrazas testified that Alas-Ayala sent Luis to recruit him, Alas-Ayala instructed him not to testify, and Alas-Ayala told him to testify that Luis recruited him. The probation officer found this testimony compelling because it was under oath and there was nothing to suggest that Gonzalez-Terrazas committed perjury. The district court, having observed Gonzalez-Terrazas's testimony at trial, adopted the probation officer's response to the PSR objections.

Most notably, Alas-Ayala did not offer evidence to rebut Gonzalez-Terrazas's testimony and does not direct this court to evidence demonstrating that it was "materially untrue." *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002) (footnote omitted). Accordingly, the PSR provides a "sufficient indicia of reliability" to support the district court's factual finding that Alas-Ayala recruited Gonzalez-Terrazas, especially since Alas-Ayala failed to offer rebuttal evidence. *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (internal quotation marks and footnote omitted). The district court's finding that Alas-Ayala recruited Gonzalez-Terrazas is plausible in light of the record as a whole and is not clearly erroneous. *See Zuniga*, 720 F.3d at 590; *Nixon*, 881 F.2d at 1310.

Alas-Ayala's argument that the court should not consider the other facts supporting the aggravating role adjustment because the only ground reflected in the PSR was the recruitment of Gonzalez-Terrazas is misplaced. This court "may affirm the district court's judgment on any basis supported by the record." *United States v. Le*, 512 F.3d 128, 134 (5th Cir. 2007) (internal quotation marks and citation omitted). The unrebutted facts in the PSR describing the offense conduct were ascertained through the investigation by law enforcement and immigration agents, which is generally considered reliable. *See United States v. Fuentes*, 775 F.3d 213, 220 (5th Cir. 2014) (citations omitted). Because the PSR establishes that Alas-Ayala previously

No. 22-51060

smuggled marijuana across the border, smuggled marijuana as a job, recruited Gonzalez-Terrazas to join the venture, instructed Gonzalez-Terrazas not to testify, instructed Gonzalez-Terrazas how to testify, and stood to receive a larger share of the fruits of the crime than his recruit, the district court's finding that Alas-Ayala was an organizer or leader of one or more participants is plausible in light of the record as a whole. *See United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006) (citation omitted); *United States v. Cooper*, 274 F.3d 230, 247 (5th Cir. 2001); U.S.S.G. § 3B1.1, cmt. n.4. Alas-Ayala has not shown that the district court clearly erred by applying the aggravating role adjustment. *See Zuniga*, 720 F.3d at 590.

## B. Enhancement Under § 2D1.1(b)(16)

The guideline for drug trafficking offenses provides for a two-level increase to the base offense level if the defendant received an aggravating role under § 3B1.1 and the offense involved one or more of a list of factors. U.S.S.G. § 2D1.1(b)(16)(A)-(E). In appealing the two-level adjustment under § 2D1.1(b)(16), Alas-Ayala challenges only the element requiring an aggravating role adjustment. For the reasons previously discussed, the finding that he was an organizer or leader is plausible in light of the record as a whole and is not clearly erroneous. Alas-Ayala has not shown clear error in the application of the § 2D1.1(b)(16) enhancement. *See Randall*, 924 F.3d at 795.

## C. Obstruction of Justice Enhancement

Alas-Ayala next challenges the sentence enhancement for obstruction of justice. In the district court, he argued that Gonzalez-Terrazas's testimony was incorrect. On appeal, Alas-Ayala contends that Gonzalez-Terrazas's testimony is internally inconsistent and that encouraging someone not to testify does not rise to the level of obstruction of justice. Because he challenges the enhancements on grounds different than he asserted in the

7

district court, review is limited to plain error. *See United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003) (citation omitted). To show plain error, Alas-Ayala must establish a forfeited error that is clear or obvious and that affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations omitted). If he makes this showing, we should exercise our discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted).

Section 3C1.1 of the Guidelines provides for a two-level enhancement if, among other things, "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Examples of covered conduct include "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, cmt. n.4(A).

Alas-Ayala has abandoned the argument that encouraging his co-defendant not to testify is constitutionally protected speech by failing to provide any analysis or cite any precedent to support his position. *See Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993) (citations omitted); *Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986). Additionally, his argument that there was no evidence of intent to obstruct justice apart from encouraging his co-defendant not to testify is misplaced. It is reasonable to infer that Alas-Ayala was trying to minimize his own role in the offense by asking Gonzalez-Terrazas not to implicate him as the recruiter. *See United States v. Zamora-Salazar*, 860 F.3d 826, 836 (5th Cir. 2017); *see also United States v. Guidry*, 960 F.3d 676, 680, 682 (5th Cir. 2020). Alas-Ayala has not shown plain error. *See Puckett*, 556 U.S. at 135.

No. 22-51060

## D. Acceptance of Responsibility Reduction

The defendant's offense level is reduced by two levels if he clearly demonstrates acceptance of responsibility. U.S.S.G. § 3E1.1(a). But "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *Id.* § 3E1.1, cmt. n.4.

Alas-Ayala argues that the district court erroneously denied him a reduction for his acceptance of responsibility because the court erroneously determined that he obstructed justice. For the reasons previously discussed, the district court did not plainly err by adjusting the offense level for obstruction of justice. Alas-Ayala has not shown that the district court's denial of a reduction for the acceptance of responsibility was "without foundation." *United States v. Hinojosa-Almance*, 977 F.3d 407, 411 (5th Cir. 2020) (internal quotation marks and citation omitted).

## IV. CONCLUSION

For the aforementioned reasons, the district court's judgment is AFFIRMED.